May it please the Court, Verdita Martinez, on behalf of Appellant, Mr. F. Flynn Fulgencio, Your Honors, genuine factual issues to exist in this case that can only be resolved by a finder of fact because they may reasonably be resolved in favor of the non-moving party. The appellant has made sufficient showing in their opposition to the motion for summary judgment that it had established the elements of its case and that the moving party is not entitled to judgment as a matter of law. Well, there are a lot of facts here that are not in dispute. There are, Your Honor, I agree. Well. But there is one big dispute, Your Honor. Well, we know what was on the warrant. Right. Well, I we argued that in the face of the bench warrant, the identification information that is found in the original bench warrant, if you look at that warrant, it's indicated, A.K.A. Karanangalon Ephraim Fulgencio. It doesn't give a legal name or a given name under the identification information. I believe the cases that we have cited agree with us that if a real name is not known on the face of that warrant, then it's illegal because it's not only presented as an A.K.A. Now, I know that in the prior arrest records from Cypress, there were multiple variations of those three names, Ephraim, Karanangalon, Fulgencio. They were sort of interchanged, but at least there's only those three names, so we know that they're all A.K.A.s. Of course, the cases also stated that if they did not know the name. Well, if you read this warrant carefully, it says in the first paragraph, or the second paragraph, Greetings. A felony complaint having been filed in this county charging the above-named defendant with a violation of Section, I can't read it, Health and Safety Code and Section 6021 of the Penal Code. And then if you look up and see the name of the defendant, it says Fulgencio Ephraim Karanangalon. And then it says down here, A.K.A. You Honor, we understand that the caption is listed as Ephraim Karanangalon Fulgencio. What we're saying is that that's not the name of the appellant. The information in this warrant, the name, is not the appellant's correct name. So they arrested the defendant. I think what Judge Paz is referring to is the above-named defendant. Well, you have to go look. Instead of saying the name, it's a reference to the name that's above named, which is the name in the caption. Right, Your Honor. I agree with that. The aliases we contend, if there is a suspicion, a reasonable suspicion, that the aliases may be that this man may be using somebody else's name, that the officers should have some reasonable suspicion that this may be a stolen name. You know, in addition to that. I think you have stronger facts than that. Maybe we should talk about it. I guess I'm going to ask this of the city, too, but given the increasing rise of identity theft and the knowledge that people are taking identifying information from driver's licenses and social security, it would seem that if there was inconsistent information that would not be ordinarily found on the driver's license, which is what's normally stolen, that kind of information and perhaps some portion of the social security number. And that was inconsistent, that that might give rise to a higher obligation by the police to check that. Because your client came in with a passport, right? Passports have a place of birth. Correct. And national origin. That was what was inconsistent here. Yet a driver's license doesn't have that information. They also had his immigration green card, Your Honor. And that green card number did not match the number, the A number that was on the bench warrant. There's a lot of inconsistencies that did not match the appellant. Well, of course, the biggest one would be the race and the place of birth. That was a big one, because that should raise a red flag, that here we have a very big inconsistency. We have a man who is returning from the Philippines. He doesn't speak Spanish. He was born in the Philippines. And we're looking for a man who was born in Mexico who only spoke Spanish. Does race appear on the driver's license? I think I'm not very certain, Your Honor. It would just be a picture. It wouldn't be ethnicity or race or origin, right? I don't remember. I don't either. Sorry. It's just that our focus was that they arrested the wrong man, and they have enough reason to believe that this is a stolen identity case, because you cannot have two afferent paranormal influential who's using the same driver's license and the same social security number. I understood in their argument that we have two individuals with the same name, and we disagreed with that, because they — because the targeted person, the targeted suspect, was using the appellant's driver's license. And that's why, in our moving papers, we believe there was an implication that the police knew that they arrested somebody. Now, interestingly, you didn't sue the arresting officer. We did, Your Honor. You did? Officers Castaneda and Officer Williams. Just the county moved for summary judgment? Is that right? They joined, Your Honor, the city of Los Angeles. Oh, I see. I see. Yes, you did. Right. And I believe we cited a case, Your Honor, Bigford v. Taylor, that states that minimal further investigation would have exonerated the suspect. It was so easy for them to check, because they had all this massive information about the targeted suspect. He had been arrested and incarcerated in the county of Orange several times. And we argued, of course, that 6 days was excessive for this type of circumstances to allow the liberty of Mr. Fulgencio to be taken away. I know that the case that is cited in Baker, the plaintiff in that case stayed 3 days. However, I think this is not the same facts in Baker. It's more like Rogan v. — Rogan and Poe, I believe, is much more similar in this case than the Baker case. And I think that we also focus on the fact that after the judge in the underlying criminal case made a decision that Mr. Fulgencio, the appellant, is not the person wanted in this bench warrant, when they took Mr. Fulgencio back into the jail and kept him additional 13 hours, I believe, that that was very unreasonable and would have violated his rights, because they knew then that he was not the right guy. I didn't understand. How do you know they knew that? Are you talking about after the arraignment? Yes, Your Honor. After the arraignment. It only took them an hour to determine, because they compared photographs. Mr. Fulgencio, the appellant, had several. What about fingerprints? Did that ever come up? The fingerprints, they checked the fingerprints and they checked the photographs. Of course, the photographs would only take a second, because there is a big difference in physical appearance. And but what I couldn't – what concerned me is after I stood there and I told the judge, and the judge, yes, he said I made a determination, this is the wrong defendant, and he was supposed to have been free to go at that point. I know that the Orange County is arguing that they have to go through a processing check-out. But why? When you go to a criminal trial, when you find that guilty, you walk out of the courthouse. You don't go back to jail and check out. I don't know if that's true. I don't know if that's true. I don't know if that's quite correct. Well, jail isn't like a hotel. Well, we understand, Your Honor, but not 13 hours. No. I know. And he – I mean, it's kind of like lumping the innocent with the guilty. You're lumping – you know, there is a determination that he's not the right person. And it doesn't end there, Your Honor. After he was released, they did not change this computer bank. Actually, when Mr. Fulgencio, the appellant, was checked in, the police officers in Orange County had changed the information system to fit his description. It's no longer Hispanic now. It's now Filipino, born in the Philippines. But when he was exonerated, they didn't change all that information. So was this just incompetence or was this intentional malice from your perspective? Well, we felt it was deliberate indifference because you've got this man who went through this entire suffering, and it was determined definitely that he's not. And after he left, it was just left into the open, and the bench warrant was still issued under his same name. There was no notation in the bench warrant to change it, except now into the computer, it's more fitting Mr. Fulgencio. So when he goes out into the public, he's stopped by police officers. So he's afraid to go out into the public. And on top of that, he's then being arrested by immigration services and was subjected to deportation proceedings. And so he felt, what am I to do? I'm subjected to constant fear that I'm going to be arrested because this bench warrant is still issued out there. The person listed is my same name, although they know it's not me because our photographs are different, fingerprints are different, and yet I can't do anything. So if that's not deliberate indifference, I cannot describe it any other way except reckless disregard. I reserve a little bit of time, Your Honor. That's fine.  Thank you. It pleads the Court, Michael J. Logan, representing the County of Orange. If Your Honors would notice, we have two parties here. I represent the County of Orange, the agency that actually issued the original warrant, and Ms. Bach here represents the City of Los Angeles, and we have agreed to split our time. And unless there's some specific request by the Court, I will go first. One of the things that became clear to me when I began my review in preparation for this argument, I was the one that actually prepared and filed the motion for summary judgment. And in review of my motion for summary judgment initially, it appears to me that I thought there was something that was pretty clear in my mind and that I expressed in the motion that on reread may not necessarily be that clear. And I want to make sure that we do understand what the allegations against these various agencies are. The First Amendment complaint has allegations against the City of Los Angeles, two individual officers under three causes of action for State issues. It has causes of action against the Immigration Service and I believe the City of Orange. The City of Orange is not in this case, nor is the Immigration Service. We're left with just the City of Los Angeles and the County of Orange. The original complaint, the County of Los Angeles was actually involved because as you can see through the history and the factual scenario that has been painted in all of these briefs, Mr. Fulgencio was taken by the City of Los Angeles down to the County of Los Angeles for a few days and eventually was transferred to the County of Orange and that's who I represent. So the allegations, when you review the allegations in the First Amendment complaint, they are very specific as to the County of Orange. And those allegations are, is that there's policies and practices in place in the County of Orange regarding the preparation, promulgation and dissemination of felony warrants. That's the extent. There are roughly two paragraphs that deal with just those allegations. When you deal with allegations against the City of Los Angeles, the County of Los Angeles, the City of Orange and the National Immigration Service, they're very different. They talk about the policies that are in place to improperly or inadequately identify people who are brought in in custody.  I think we understand that. But what, she does have an additional one against the County, which would be the detention after the arraignment. That's, that's another issue that when we looked at the issues in the complaint, there is actually no allegation regarding detainment after the arraignment. The, once we decided to do our motion for summary judgment, the facts in support of the motion are based upon the discovery that we had done during the course of the case. No depositions had been taken on factual issues. Two depositions had been taken of experts. But the only discovery, and we have included it in our factual presentation, is responses to interrogatories that we specifically asked the plaintiff to identify facts in support of these claims. And they specifically addressed three questions regarding the validity of the warrant. The response was identical on all three answers. We don't have any facts now. We'll let you know when we get them. Well, isn't updating the NIC, NCIC records also, wouldn't that have also been Orange County's responsibility? Pardon? She makes this claim about you didn't update the database to show that this is a different person. Well, just the allegation. That would be against the County of Orange. Yes. Well, let's talk about that. Because the one thing that's critical here is to understand that there are two people out there with this same name. That's what the County of Orange knows at this time. Actually, the County of Orange knows a lot more at this time. The County of Orange knows that Mr. Fulhensia's identity was stolen, that somehow his driver's license was taken. This is what he told you was taken, and that that information, in combination with other records from the real person who's using Mr. Fulhensia's identity, was put together and compiled in this warrant. Now, I understand. Let's back up to the point that the information is gathered originally in 1993. It is taken from the City of Cypress Police Department report that contains erroneous information, of which then the county has no way to verify because that information is passed through when he's arrested or when he is brought in and processed through the county system. The County of Orange then, as he fails to report for probation after he's released on three occasions, processes the same warrant. The warrant is released. He is rearrested and processed through the system. There is still no information and no evidence anywhere that this gentleman is using the plaintiff's identity. It is possible that there are two people with this name, one from Mexico, one from the Philippines. There's no question about that. Why is that the only possibility that you think of? It's not the only possibility. I mean, you're saying she didn't – I mean, it just seems to me – I'm not sure how I feel about this case, but there seems to be something really wrong when Mr. Fulhensia was detained by the INS. While he was right there, detained by the INS, why didn't someone take the hour to check in light of the obvious discrepancies between the passport and whatever other immigration papers he had and the description on the warrant? What is the reason not to take that step, given the knowledge of every law enforcement agency in the United States right now of massive identity theft going on, both by terrorists and non-terrorists? I mean, this is a huge problem. We've had just in the past couple of days announcements from Westlaw and Lexis that, you know, thousands and thousands and thousands of people's identifying information has been stolen. Why not require the police to have a system in place where they make sure they have the right person before they take them to jail and take them to trial and then later on detain and try to deport them? Well, let's take it a step at a time. I don't know that Mr. Fulhensia was detained by INS. I don't believe that's in the record. Well, that was in the record. While at INS, he was detained when they did their first check, and then he was picked up by the Los Angeles County police, who also didn't check. And that's the question I have for Chief Bratton and Mr. Roccadio and Mayor Hahn, why they don't get procedures in place there to do this. And then the county of Los Angeles. Right. And then they take it back to you. Right. It's the same question all the way down the line.  I concede that. That's true. But I think that the point in beginning this argument was, is that we did present facts of policies that are in place, and we have pages of those policies that clearly indicate the procedures to identify the right person. Now, perhaps the words identity theft are not encompassed in those procedures, but I don't think that's necessarily required if the procedures themselves are broad enough to include that type of evaluation, where you have two people with the same name, both who have criminal records in the systems that are already there, and that that evidence is in the record. Our plaintiff does have a criminal record. His information is in there. The person we were seeking under the warrant has a criminal record. His information was in the system. Now, if the originating agency, the city of Cyprus, happens to pick up some erroneous information and it is carried forward, it creates the problem. Let me just, I'd like to clarify something with you before you cede your time to the city of L.A., but the district court granted summary judgment on the basis that there was no constitutional violation alleged, that the facts here did not amount to a constitutional violation, either in the execution of the warrant or in his continued detention afterwards. Now, the suit against the county of Orange, obviously, is a Monell claim. That's right. And so they allege, the allegation has to be that there's a policy or practice or custom that's the cause of the constitutional violation, if I'm not mistaken. That's right. And I gather your, your, your, is your point that there is, that these facts do not support a constitutional violation, or is your point that they cannot identify a policy or practice or custom that gives, that would cause the alleged constitutional violation, which, as I understand it, is actually the seizure and the continued detention? I guess it could be. Where do you come out? What's your, what's your point? I guess it could be a couple of things. We address the issues of the issuance of the warrant and whether or not that warrant is valid or invalid, and the actual information that we're getting. That goes to whether there was, or a reasonable cause or a probable cause. That's correct. And then this identifying factor, I, I believe, is, is pretty much the same issue. Can I clarify one thing you said? You said that the real Mr. Fulgencio, the plaintiff in this case, had a criminal record, too? Yes. Where's that in the record? I can't. I believe it's in the plaintiff's documentation that she submitted in response to the summary judgment. It may only be in her argument. It may only be in her argument. I believe it is. I don't know that I could put my finger on it. I, I, I, just getting back to my, I just want to know what the county's position was. Was there a constitutional violation on these facts? Or is it that there was no policy or practice or custom giving, that would cause such a constitutional violation? Well, I, I think if you look at the case law that talks about misidentification of people who are arrested pursuant to a validly issued warrant, the question is, is can you have a constitutional deprivation over an extended period of time? And it sounds like you can, depending on how long it is. We have a series of cases who have talked about times longer than this where the person is arrested pursuant to a valid warrant. So I don't believe that's the issue here. I think what she is arguing is, is that, that there is a policy in place in the county, or there's no policy in place in the county. Basically, the county just, just pulls this information out of nowhere and, and tells it off to people to tell them to go out and arrest this fellow. So your focus is on the lack of a policy or custom. She can't identify a policy. She hasn't identified a policy. Okay. She hasn't. All right. And just to sum up very quickly, the point that I was making originally is, is we did our summary judgment on the facts that were, or the allegations that were in the complaint. Right. And those allegations were not supported by any facts that she presented. Well, the district court, you know, in the district court's order, the district court says the plaintiff's post-release confinement does not give rise to a Section 1983 claim. So the district court thought that she had raised that claim, or, you know, he's just gratuitously, you know, just throwing it in there. So he must have thought that, that, that it was there or it was part of the complaint or that, you know, he was sort of just treating the complaint as, as amended. Yeah. Informally amended. Yes, Your Honor, you may be correct. And I think that was what I gleaned when I began reviewing this again, is where did this come from? Because, excuse me, it isn't in, it isn't in the pleadings. It isn't in the summary judgment motion. It is, it is just in one statement in the opposition. It is not in my reply. It was not briefed. It was not argued during oral argument, yet it pops up in the opinion. And then, more important, it doesn't show up as an issue that the plaintiff has addressed in the appeal. So it's one of those things that's sort of out there, but the bottom line is, is that the Brass case based on the plaintiff's opinion. I don't think we all might have some questions for the City of Los Angeles, so you're eating into her. Good morning. May it please the Court. Glyde Bach on behalf of the City of Los Angeles and Officers Williams and Castaneda. Your Honors, I've indicated that you have questions for me. I'd like to just start off with, with really trying to clarify exactly what the role is of the City. And I think it's been mentioned, but just to make sure that we're clear. The warrant was issued by the County of Orange. The appellant here arrived in the LAX and was initially detained by the INS or by the immigration service there in the airport. The only role of the LAPD was that after Fulgencio waited at the INS in the airport, the officers, the LAPD officers, came over and essentially picked him up, escorted him to the jail, brought him to the LA County jail. It's run by the county, not the city. And so their role is exclusively essentially enforcing this warrant that was issued by the county. But wasn't that an arrest? Didn't they arrest him? Correct. They arrested him. And so the warrant, they arrested Fulgencio. Correct. But my point is only that for these individual officers, the issue is very narrow, which is, was it reasonable, would a reasonable officer have believed that this appellant, Efren Kerangulan Fulgencio, was in fact the suspect named in the warrant who had the same birthday, the same name, which was quite an unusual name, the same identifying characteristics with regard to height and weight, although I guess there was a five-pound difference as the only difference. It is true that the warrant listed Mr. Fulgencio, and I guess the documents that were presented there, listed him as having been born in the Philippines. However, there is case law, and that's cited in my brief, in which when you have you know, it's a totality of the circumstances issue or test that, you know, you look at. There's several cases that talk about, like the Brown v. Patterson case, for example. You had a warrant that was issued for a black male, and a white male was arrested. However, the reason why he was arrested, because they had the he had the same name and, ironically, the same date of birth as a suspect. The name wasn't even that unusual. It was, I believe, Willie White. Here we have a very unusual name. So I think with those facts that we have. Roberts. Let me ask you this. I don't recall the details right now at the moment. It's been a while. It's a few days since I've looked at this. But didn't Mr. Fulgencio tell the officers that he was, he had the wrong guy and, you know, I'm from the Philippines. Not the discussion about the Philippines. That was actually, my understanding is that that was with the INS. He did protest to the LAPD officers and say that he was innocent and they had the wrong guy. However, uniformly, the cases have recognized a lot of suspects make the same comment. Let me ask you this. Do we know from the record, you know, when the, so they get this call. LAPD gets this call from INS. We have this guy in custody and there's that warrant out for him. Do they actually print out the warrant? They are allowed. What is, do they just get a little notice in the system that there's a warrant out for him? I'm not sure. What detailed information do they have when they actually, you know, go out to the site to arrest somebody pursuant to a warrant that's in the system? My understanding is that what they would rely on in that circumstance and what's in the record here is what's called an abstractive warrant. So that there's the actual warrant, but then in this kind of a situation, there's sort of a computerized printout. It's in the record, my supplemental excerpts of record at page 244. And that document lists the information. If you look at the top of that document, it was printed on, it looks like the date of the arrest at 21 hours. So this was what was printed out. The day of the arrest. And this is what lists, as I said, date of birth, name. Right. But what we have at 160 is actually a copy of ER 160, the actual warrant, not the abstract. Correct. That's my understanding. And the abstract is what? Well, let me ask you. Why isn't, why wasn't there any effort done? It just strikes me. Neither the INS, nor the LA City, LAPD, nor the LA County, when they admit Fulgencio into the MDC, nobody bothers to do a check to see if it's the same guy. And I mean, I just find it really troubling in light of, you know, everything that's happening in our world, that there wouldn't be a process in place as part of the It is very unfortunate. It's unfortunate what happened at the end. It was determined this was the wrong man. You're correct. That is very unfortunate. The problem, though, is that essentially in these kind of situations, first of all, with identity theft, it's true that's come out right now as a major issue. But remember, this is back, this is five years ago. No, it's been, this one's five years. It's been growing as an issue. It happens to be a more immediate issue because of the murder of Judge Lefkoe's spouse and mother. But it's been growing, obviously. It's probably been growing in the past ten years. And there's been numerous cases that I've seen in federal courts of identity theft and fraud related to immigration issues. That is true. But, you know, also I think we need to look at this on the face of the warrant, that there was this discrepancy between being Filipino and Hispanic. I acknowledge that that is a discrepancy, although I'll also note that the appellant in the record actually noted herself or the appellant's counsel that there are often, there's often confusion between people of Hispanic descent and Filipino descent, and that's in the record at 407. So not to excuse it, but it is something that is sometimes confused. But I think that that is one factor that needs to be looked at and weighed against all these other factors. When you have somebody with such an unusual name, the date of birth, there's no explanation why would, with an unusual name and the same exact date of birth and the same identifying information, color, hair, all that. But that's the problem. All of that is on your driver's license. And what Mr. Fulgencio immediately said was, my driver's license was stolen. All that very information would be exactly what the person who victimized Mr. Fulgencio the first time got. He didn't get the Filipino or the fact that he was born in the Philippines from the driver's license, so that wouldn't be there. That's true, but I think also you have to look at it that, you know, this is November 8th, 1.30 in the morning. They're being called out on the warrant. You know, this evidence indicates that they have the right guy. These kind of issues, like looking into the background, looking, doing a further investigation, doing the fingerprinting, those are the kind of things that come out through the judicial process, and that's exactly what happened here. So when they go in and book him, they had to book him. They took him into custody, so they had to book him. Right. They had to take his fingerprints. Right. I mean, there's no obligation just to check? Unfortunately, my record is not as developed as perhaps it could have been. He was booked, it's true. And doesn't booking, as my understanding, booking always, you know, they always do the fingerprints at booking. But I don't know if they necessarily then would compare that to make sure that, hey, is this Efrin, Keranguil, and Fragetti? Even when he's telling them, ah, you've got the wrong guy, you've got the wrong guy, you've got the wrong guy. As I say, that's something that happens very commonly in the Baker case. Take a look at the, you know. Baker v. McClellan case, which I cited. Let me ask you this. Is it the city of Los Angeles' position that there was no constitutional violation here, like the district court found? Correct. There is. Did the officers move for qualified immunity? What they did is they joined the county's motion, and in their joinder notice, they specified that the grounds for the joinder is that there's no constitutional violation. So were they seeking qualified immunity? They were then. Or they weren't? That would be, you know. Actually, a finding of no constitutional violation would pertain to both qualified immunity and. Right. First prong of the Katz analysis.  But if we were to disagree, if we were to say that on these facts, they could establish a constitutional violation, then I gather the officers would want to have a chance to raise their qualified immunity claim. Right. And then to go to the second prong, which is. Was the law clearly established at the time. So that was not addressed below. It wasn't, but I think that we can, just looking at the case law that I cited, I think the case law was clearly established, actually, to the contrary, that it is reasonable to, when you have this, I mean, it is decided on the facts, but if you have a situation in which you have the correct name, identical date of birth, and all the other items I've talked about, the fact that there might be a discrepancy, the fact that the, you know, with regard to the date of birth or the place of birth and the fact that the suspect is protesting, I think under Baker v. McClellan is the main case. So your position is, the LAPD's position is, is that even though he was protesting that they got the wrong guy, the whole time that they had him, they had no obligation to do anything, and it was up to the court, it was up to the judicial process, as you just said, to sort that out. Is that the city's conviction? It's that they didn't have an investigation to do a full-blown investigation, and that's what the Baker case stands for, that what they did do, which was comparing the warrant to this gentleman and the information that they did have, drawing the conclusion that this was the right guy. Did they have his passport? Was that so unreasonable? Let me ask you this. When they took him into custody, did they have his passport? My understanding is that they did, and the passport has his date of birth. It does have his place of birth, which I guess, this abstract of warrant doesn't mention any place of birth. So I don't even know if that's a discrepancy. Well, it supports his story. I'm innocent, and this person is using my identity because he stole my driver's license a few years ago, and it supports his story. I don't know. I mean, I don't know how we resolve this because I'm not sure that it rises to a constitutional violation, but I also believe that the law enforcement entities were on notice that this wasn't the usual case and should have had a higher obligation. Well, with regard to the law enforcement agencies, our position is similar to the agency. The burden was on the appellant, was on the plaintiff below, to meet her Monell showing and to establish the policy. There was no attempt. There was nothing, nothing. How did it come up procedurally? Orange County says they filed this motion. Was discovery closed? I mean, where was it procedurally? I believe so, and then the city defendants joined. All right. All right. Does anyone have any other questions? And one other thing, too, is I just want to emphasize that, again, the officers transported Mr. Pagencio to the jail. The jail is a county-run facility. That was the end of their contact. Right. All right. Just so. Thank you. Thank you, Your Honor. Anything else? Anything further? All right. Oh, let me just ask you. Did your client have a prior Orange County criminal record? No, he doesn't, Your Honor. He did have, in the 1970s, when he was a young man, he had, I think, use of drugs that was in San Diego County, not in Orange. All right. Thank you, counsel. Thank you. All right. Fulgencio v. Los Angeles et al. is admitted, and this session of this Court is adjourned for today. All rise. This Court for this session is adjourned. Thank you. Thank you. Thank you.
judges: Wardlaw, Paez, Beistline